IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GORDON KIRK KEMPPAINEN | § | |
|     TDCJ NO. 1541042 | § | |
| v. | § | C.A. NO. C-08-194 |
| | § | |
| ARANSAS COUNTY DETENTION CTR. | § | |

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Gordon Kirk Kemppainen claims that jail personnel at the Aransas County Detention Center ("ACDC") were deliberately indifferent to his serious medical needs because they failed to provide him prescription eyeglasses in violation of the Eighth Amendment and the Americans with Disabilities Act ("ADA"). Defendant Aransas County moves for summary judgment to deny plaintiff's claims arguing that plaintiff failed to advise jail personnel that he was legally blind when he arrived at the Center. (D.E. 57). Plaintiff has filed a response in opposition. (D.E. 59). In addition, plaintiff moves to amend his complaint to bring similar deliberate indifference claims against the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), where he is now in custody. (D.E. 61).

For the reasons stated herein, defendant's motion for summary judgment is denied. Similarly, plaintiff's motion to amend complaint is denied.

**I. JURISDICTION**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. After consent by the parties, (D.E. 12, 30), this case was referred to the undersigned magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 33); see also 28 U.S.C. § 636(c).

## II.  PROCEDURAL BACKGROUND

Plaintiff is an inmate in the TDCJ-CID, and is currently incarcerated at the Mineral Wells Facility in Mineral Wells, Texas, although his complaint concerns events that occurred while he was at the ACDC.  He filed this civil rights action on June 17, 2008, naming Aransas County as defendant, and claiming that Aransas County had been deliberately indifferent to his serious medical needs by enforcing a policy excluding replacement prescription eyeglasses and annual eye exams.  (D.E. 1).  In addition, plaintiff alleged that defendant had failed to provide him with adequate legal materials in violation of his right to access the courts.  Id.

Following a July 22, 2008 Spears[1] hearing, service was ordered on Aransas County.  (D.E. 22).  On September 11, 2008, plaintiff moved for summary judgment.  (D.E. 29 ).  On October 24, 2008, defendant filed a response and cross-motion for summary judgment to dismiss plaintiff's claims.  (D.E. 40).  By order entered January 8, 2009, plaintiff's motion for summary judgment was denied.  (D.E. 46).  Similarly, in that same order, defendant's motion regarding plaintiff's deliberate indifference claim and his ADA claim was denied.  Id.  Defendant was granted summary judgment in its favor on plaintiff's First Amendment claim alleging denial of access to the courts.  Id.

On March 13, 2009, defendant filed the instant motion for summary judgment on plaintiff's claims of deliberate indifference.  (D.E. 57).  On April 6, 2009, plaintiff filed a response in opposition.  (D.E. 59).  On April 23, 2009, plaintiff filed a motion to amend complaint to name the TDCJ-CID as a defendant.  (D.E. 61).

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff claims that ACDC employees were deliberately indifferent to his serious medical needs from March 23, 2006, until his transfer to the TDCJ-CID on December 15, 2008, because jail officials followed Aransas County's policy of denying medical services for prescription eyeglasses and eye examinations. In particular, he claims that on April 23, 2006, his eyeglasses were broken, leaving him unable to perform basic hygiene, such as clipping his toenails, and preventing him from watching television or playing board games. He claims that he repeatedly requested replacement glasses, or an appointment with an optometrist to get a new prescription, but was told that such services were not allocated in the ACDC's budget.

Plaintiff is seeking compensatory and punitive damages. In addition, he moves for injunctive relief requesting that the Court order Aransas County to provide him with an eye examination and new prescription eyeglasses.

### IV. SUMMARY JUDGMENT EVIDENCE

In support of its motion for summary judgment, Aransas County offers the following evidence:

Ex. A:   Booking Medical Sheet dated March 23, 2006;

Ex. B:   Booking Medical Sheet dated January 13, 2006; and

Ex. C:   Texas Uniform Health Status Update dated August 28, 2006.

The evidence establishes the following facts:

Without his eyeglasses, plaintiff's vision is less than 20/250 in each eye. (D.E. 1, at 1). He requires prescription eyeglasses to see correctly, and needs to have his prescription reevaluated every one to two years. Id. at 2.

On January 13, 2006, plaintiff was booked at the ACDC, where he was screened by medical personnel. (D.E. 57, Ex. B). In the "visual assessment" section of the Booking Medical Sheet, it was noted that plaintiff had no obvious signs of injury, physical deformities, or psychiatric problems. Id. at 1. In response to specific medical questions, he related that he suffered from peptic ulcers and lower back pain which limited his activities. Id. at 1, 3. He was not asked whether he wore prescription glasses.

On March 23, 2006, plaintiff was returned to the ACDC following his conviction at his criminal trial. A second Booking Medical Sheet was completed. (D.E. 57, Ex. A). Again, plaintiff related that he suffered from a peptic ulcer and "a bad back." Id. at 1, 4. There was no specific question regarding his vision. Id.

On March 29, 2006, ACDC medical employees completed a Texas Health Status Update form regarding plaintiff. (D.E. 57, Ex. C at 2). It was noted that plaintiff had no health problems, needed no special housing restrictions, and that he could participate in routine transportation. Id. at 2, 3. On April 11, 2006, another Health Status Update form was completed, in which plaintiff identified his back pain as a chronic condition. Id.

On April 23, 2008, plaintiff's prescription eyeglasses were broken. (D.E. 59, at 3). On April 30, 2008, he filed a grievance complaining, *inter alia*, that his eyeglasses had been broken. (D.E. 1, at 15-16). He complained that, prior to his eyeglasses being broken, he repeatedly requested an eye examination, but was denied. Id. at 16. He related that, as a result of his denial to an examination and a new pair of eyeglasses, he could no longer watch television or enjoy other activities that other inmates could enjoy. Id.

4

On August 28, 2008, plaintiff was seen by ACDC medical personnel for his Health Status Update.  (D.E. 57, Ex. C at 1).  No chronic health problems were noted.  Id.

On September 4, 2008, plaintiff was seen in the infirmary by Dr. Randy Bingham.  (D.E. 29, at 2).  He told Dr. Bingham that he was suffering from pain and discomfort by not having his eyeglasses.  Id.  He related that he could not trim his toenails without hurting himself.  Id.  He asked Dr. Bingham about getting new eyeglasses.  Id.  An ACDC Nurse, Vincent Anzaldua, interrupted plaintiff's conversation with Dr. Bingham and told plaintiff that Aransas County's policy excluded eye examinations and eyeglasses due to lack of funding.  Id.

On December 15, 2008, plaintiff was transferred to the TDCJ-CID system.  (D.E. 61, at 2).  From April 23, 2008 through December 14, 2008, plaintiff was at the ACDC without eyeglasses.  Id.

## V.  DISCUSSION

**A.     Summary Judgment Standard.**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in

favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

**B.     Defendant's Motion For Summary Judgment On Plaintiff's § 1983 Claim Is Denied.**

Plaintiff has sued Aransas County claiming that its policy of prohibiting eye exams and replacement eyeglasses at the ACDC constitutes deliberate indifference to his serious medical needs.

For a municipality to be liable pursuant to § 1983, there must be: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).  These three elements "are necessary to distinguish

individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Piotrowski, 237 F.3d at 578.

An "official policy" "may be either a written policy or 'a persistent widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" Lawson v. Dallas County, 286 F.3d 257, 263 (5th Cir. 2002) (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). There must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right. Id. An isolated incident is insufficient to show a custom. Bennett v. City of Slidell, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc).

Plaintiff testified that an ACDC employee told him that Aransas County has a policy of denying eye examinations and prescription eyeglasses to indigent inmates due to funding issues. In its summary judgment motion, defendant has not challenged this allegation. In addition, plaintiff claims that he repeatedly requested eyeglasses and an eye examination, and that he complained to Dr. Bingham about suffering headaches and other discomfort as a consequence of not having his eyeglasses.

The Fifth Circuit has indicated that the denial of eyeglasses by prison officials may constitute an Eighth Amendment violation. See Newman v. Alabama, 503 F.2d 1320, 1331 (5th Cir. 1974). The Second Circuit has held that the denial of eyeglasses to a prisoner who suffered from double vision and the loss of depth perception after a head injury could constitute deliberate indifference, explicitly rejecting the argument that the denial of eyeglasses can never

constitute deliberate indifference. Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (citations omitted).

In Benter v. Peck, 825 F. Supp. 1411 (S.D. Iowa 1993), the court held that plaintiff's "poor vision constituted a serious medical need for prescription glasses." Id. at 1417. Without glasses, that plaintiff was legally blind by the federal standard: "central visual acuity of the number 20/200 or less in the better eye with the use of a correcting lens." Id. at 1416 (quoting 42 U.S.C. § 416(i)(1)). The prison doctor's decision to deny eyeglasses to an inmate who had 20/400 vision constituted deliberate indifference. Id. at 1417. Moreover, prison officials had a duty to investigate plaintiff's medical needs and their refusal to do so before refusing to provide him with eyeglasses constituted deliberate indifference. Id. at 1419.

In support of its motion for summary judgment, Aransas County first offers two medical screening forms, dated before plaintiff lost his glasses, in which he does not list his vision as a serious impairment. (D.E. 57, Exs. A & B). As argued by plaintiff, however, the fact that plaintiff, with his corrective lenses, did not consider himself physically limited, has no bearing on whether Aransas County has an unconstitutional policy of refusing vision-related claims by inmates. Similarly, the information contained on the Health Status Updates dated March 29, 2006, and April 11, 2006, (D.E. 57, Ex. C at 2, 3), was also gathered prior to plaintiff's eyeglasses being broken, such that he had no reason to list his vision as a disability or chronic health care problem.

Finally, Aransas County offers a Health Status Update dated August 28, 2008. (D.E. 51, Ex. C at 1). Defendant argues that, because plaintiff did not list his vision as a chronic or current health problem, he failed to advise ACDC medical staff of his serious medical condition such

that defendant had no knowledge of the condition, and therefore, could not be deliberately indifferent. This argument fails, however, as plaintiff contends that he did in fact tell medical personnel about his eyeglasses being broken and that he was suffering without corrective lens. Moreover, it is obvious that ACDC staff knew of plaintiff's vision problems because, according to plaintiff, they rejected his claim for eyeglasses and an eye examination, allegedly based on Aransas County's policy of denying claims concerning eyeglasses and eye examinations.

Defendant has failed to offer the affidavit of any Aransas County administrator refuting the alleged policy or practice. In addition, defendant has failed to produce copies of plaintiff's medical records such that the reasonableness of the policy at issue could be evaluated. As such, genuine issues of material fact exist on the question of whether Aransas County has an unconstitutional policy or practice in the context of denying plaintiff's request for eyeglasses and an eye exam, and whether that policy amounts to deliberate indifference in this case. Accordingly, defendant's motion for summary judgment, (D.E. 57), is denied.

**C.     Plaintiff's ADA Claim Is Dismissed.**

Plaintiff alleges that defendant's refusal to provide him with eyeglasses constitutes an ADA violation. Title II of the ADA prohibits discrimination by public entities based on the availability of services:

> Subject to the provision of this subchapter, no qualified individual
> with a disability shall, by reason of such disability, be excluded
> from participation in or be denied the benefits of the services,
> program, or activities of a public entity or be subjected to
> discrimination by any such entity.

42 U.S.C. § 12132. The Supreme Court has determined that this section applies to state prisons. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). Consequently, this section applies to county jails.

In order for plaintiff to succeed on his ADA claim, he must establish that he has a disability as defined by the statute. The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). The statute explicitly lists "seeing" as a major life activity. 42 U.S.C. § 12102(2)(A); see also Albertson's, Inc. v. Kirkinburg, 527 U.S. 555, 563 (1999) ("There is no dispute ... that seeing is one of [plaintiff's] life activities.") (citing 29 C.F.R. § 1630.2(i)).

Plaintiff has argued that defendant violated his constitutional right by denying him eyeglasses. Among the relief sought, he seeks a new pair of eyeglasses. In Albertson's, the Supreme Court explained "that mitigating measures must be taken into account in judging whether an individual possesses a disability." 527 U.S. at 565 (discussing Sutton v. United Airlines, Inc., 527 U.S. 471 (1999)). Last year, Congress amended the ADA to remove the litigating effect of the Supreme Court's ADA decisions, including Sutton. ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, § 2(a)(4). Thus, Congress amended the ADA to require the determination of whether an individual is disabled "without regard to the ameliorative effects of mitigation measures." Id. at § 3(4)(E)(i). However, "[t]he ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity." Id. at § 3(4)(E)(ii).

In other words, despite the recent amendments, plaintiff's disability for purposes of his ADA claims must address his disability <u>with</u> the aid of eyeglasses. If plaintiff had proper eyeglasses, it is undisputed that he would not be disabled pursuant to the ADA. Accordingly, defendant's motion for summary judgment regarding plaintiff's ADA claim is granted and that claim is dismissed.

**D.     Plaintiff's Request For Injunctive Relief Is Denied As Moot.**

In his original complaint, plaintiff requested that Aransas County be ordered to provide him with an eye examination and prescription eyeglasses. However, plaintiff is no longer at the ACDC, and as such, his claims for injunctive relief are moot, and denied as such. See <u>Edwards v. Johnson</u>, 209 F.3d 772, 776 (5th Cir. 2000) (request for injunctive and declaratory relief becomes moot when inmate leaves the complained-of facility).

**E.     Plaintiff's Motion To Amend Is Denied.**

Plaintiff seeks leave to amend his complaint to name as a defendant Nathaniel Quarterman in his official capacity as executive director of the TDCJ-CID. (D.E. 61). Plaintiff maintains that, since his arrival at the TDCJ-CID, he has still not received eyeglasses or an eye examination, and he seeks a court order requiring the TDCJ-CID to provide these services.

Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). Determining when justice requires permission to amend rests within the discretion of the trial court. <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330 (1971); <u>Little v. Liquid Air. Corp.</u>, 952 F.2d 841, 846 (5th Cir. 1992) (citations omitted). In exercising its discretion in considering a motion to amend a complaint, the district court may consider, among other factors, "undue delay, bad faith

11

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Stripling v. Jordon Prod. Co., 234 F.3d 863, 872-73 (5th Cir. 2000) (amendment should be denied if futile).

In this case, plaintiff is attempting to raise a new claim against a new defendant. Although he asserts claims of deliberate indifference against both Aransas County and the TDCJ-CID, his claim for damages against a municipality are markedly different in substance than his claims for injunctive relief against TDCJ-CID. Finally, it would cause undue prejudice to Aransas County if deadlines were delayed due to the addition of a new defendant.

To the extent that plaintiff is being denied eyeglasses or an eye examination by the TDCJ-CID, such a claim arises out of his incarceration in Mineral Wells, Texas, which is located in Palo Pinto County. This Court does not have jurisdiction over this claim, or any defendants at that prison facility. Indeed, jurisdiction is in the Fort Worth Division of the Northern District of Texas. 28 U.S.C. § 124(a)(2). Plaintiff is not prohibited from bringing his claims against the TDCJ in a separate proceeding, and that is the most appropriate procedure in this case. Thus, plaintiff's motion to amend complaint, (D.E. 61), is denied.

## VI. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment, (D.E. 57), on plaintiff's ADA claim is GRANTED. However, defendant's motion for summary judgment, (D.E. 57), on plaintiff's claims of deliberate indifference is DENIED, and this claim shall

proceed to trial. Plaintiff's motion to amend complaint to bring claims against the TDCJ-CID, (D.E. 61), is DENIED.

ORDERED this 15th day of May 2009.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE