IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GORDON KIRK KEMPPAINEN § | | |
| TDCJ-CID #1541042 § | | |
| v. § | | C.A. NO. C-08-194 |
| § | | |
| ARANSAS COUNTY DET. CTR. § | | |

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a state prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Pending is Defendant's motion for summary judgment. (D.E. 107). Plaintiff filed a response on November 12, 2010. (D.E. 112). For the reasons stated herein, Defendant's motion is hereby GRANTED.

**I. JURISDICTION**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. After consent by the parties, (D.E. 12, 30), the case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 33); see also 28 U.S.C. § 636(c).

**II. PROCEDURAL HISTORY**

Plaintiff filed this action on June 17, 2008, alleging that his civil rights were violated while in the custody of the Aransas County Detention Center ("ACDC"). (D.E. 1). Specifically, he claimed that the ACDC failed to replace a pair of broken eyeglasses, refused to provide him with an eye examination, and neglected to supply him with various materials he required in order to prepare his criminal appeal. Id. Plaintiff argued that these actions violated his rights to court access and medical care pursuant to § 1983, and his right to accommodations pursuant to the Americans With Disabilities Act ("ADA"). Id. On January 8, 2009, Plaintiff's access to courts claim was dismissed and further briefing on his remaining claims was ordered. (D.E. 46). After

both parties supplemented the record, summary judgment was granted to Defendant with respect to Plaintiff's ADA claim on May 15, 2009, and the deliberate indifference claims were set to proceed to trial. See generally Kemppainen v. Aransas Cnty. Det. Ctr., 626 F. Supp. 2d 672 (S.D. Tex. 2009).

At an October 27, 2010 hearing, the Court granted leave to Defendant to file another motion for summary judgment because defense counsel represented that discovery had shown Plaintiff to lack evidence of the seriousness of his medical condition. On November 3, 2010, Defendant filed that motion for summary judgment. (D.E. 107).

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff claims that ACDC employees were deliberately indifferent to his serious medical needs from March 23, 2006, until his transfer to the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID") on December 15, 2008, because jail officials denied him medical services for prescription eyeglasses and eye examinations. (D.E. 1). In particular, he claims that on April 23, 2006, his eyeglasses were broken, leaving him unable to attend to his basic hygiene, such as clipping his toenails, and preventing him from watching television or playing board games. Id. at 16. He claims that he repeatedly requested replacement glasses, or an appointment with an optometrist to get a new prescription, but was told that such services were not allocated in the ACDC's budget. (D.E. 29, at 2).

Plaintiff is seeking compensatory and punitive damages. His request for injunctive relief has been dismissed as moot because he is no longer confined at the ACDC. See Kemppainen, 626 F. Supp. 2d at 679.

## IV. SUMMARY JUDGMENT EVIDENCE

In support of its pending motion for summary judgment, Aransas County offers the following new evidence:

Ex. A:  Excerpts of deposition testimony by Plaintiff taken on July 22, 2010; and

Ex. B:  Plaintiff's objections and responses to production requests.

In the original complaint, Plaintiff alleged that his vision is less than 20/250 in each eye, that he requires prescription eyeglasses to see correctly, and that he needs to have his prescription reevaluated every one to two years. (D.E. 1, at 2).

On January 13, 2006, Plaintiff was booked at the ACDC, where he was screened by medical personnel. (D.E. 57, Ex. B). In the "visual assessment" section of the Booking Medical Sheet, it was noted that Plaintiff had no obvious signs of injury, physical deformities, or psychiatric problems. Id. at 1. In response to specific medical questions, he related that he suffered from peptic ulcers and lower back pain, which limited his activities. Id. at 1, 3. He was not asked whether he wore prescription glasses.

On March 23, 2006, Plaintiff was returned to the ACDC following his conviction at his criminal trial. A second Booking Medical Sheet was completed. (D.E. 57, Ex. A). Again, Plaintiff related that he suffered from a peptic ulcer and "a bad back." Id. at 1, 4. There was no specific question regarding his vision. Id.

On March 29, 2006, ACDC medical employees completed a Texas Health Status Update form regarding Plaintiff. (D.E. 57, Ex. C, at 2). It was noted that he had no health problems, needed no special housing restrictions, and that he could participate in routine transportation. Id. at 2, 3. On April 11, 2006, another Health Status Update form was completed, in which Plaintiff

identified his back pain as a chronic condition. Id.

On April 23, 2008, Plaintiff's prescription eyeglasses were broken. (D.E. 59, at 3). On April 30, 2008, he filed a grievance complaining, inter alia, that his eyeglasses had been broken. (D.E. 1, at 15-16). He complained that, prior to his eyeglasses being broken, he repeatedly requested an eye examination, but was denied one. Id. at 16. He related that, as a result of his denial of an examination and a new pair of eyeglasses, he could no longer watch television or enjoy other activities that fellow inmates could enjoy. Id.

On August 28, 2008, Plaintiff was seen by ACDC medical personnel for his Health Status Update. (D.E. 57, Ex. C, at 1). No chronic health problems were noted. Id.

On September 4, 2008, Plaintiff was seen in the infirmary by Dr. Randy Bingham. (D.E. 29, at 2). He told Dr. Bingham that he was suffering from pain and discomfort as a result of not having his eyeglasses. Id. He related that he could not trim his toenails without hurting himself. Id. He asked Dr. Bingham about getting new eyeglasses. Id. An ACDC Nurse, Vincent Anzaldua, interrupted Plaintiff's conversation with Dr. Bingham and told him that Aransas County's policy excluded eye examinations and eyeglasses due to lack of funding. Id.

On December 15, 2008, Plaintiff was transferred to the TDCJ-CID system. (D.E. 61, at 2). From April 23, 2008 through December 14, 2008, he was at the ACDC without eyeglasses. Id.

## V. DISCUSSION

Defendant moves for summary judgment on the grounds that Plaintiff has not demonstrated a serious medical need, that he has provided no evidence of deliberate indifference, that he has not shown that he suffered an injury, and that he has pointed to nothing

in the record indicating a custom or practice on the part of Aransas County.  (D.E. 107, at 3-7).

**A.      The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Hous., 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a

showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.    Defendant Is Not Entitled To Summary Judgment On The Ground That There Is No Official Policy To Challenge.**

For a municipality to be liable pursuant to § 1983, there must be: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001). These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Piotrowski, 237 F.3d at 578.

The Fifth Circuit has announced that "[a]n official policy for § 1983 purposes may be either a written policy or 'a persistent widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" Lawson v. Dallas Cnty., 286 F.3d 257, 263 (5th Cir. 2002) (quoting Webster v. City of Hous., 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). There must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right. Id. An isolated incident is insufficient to show a custom. Bennett v. City of Slidell, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc).

In support of its second motion for summary judgment, Defendant submitted an affidavit from Marvine Wix, the Aransas County Indigent Health Care Director, attesting to the fact that "[t]he Indigent Health Care basic services would provide for an eye exam but glasses are not a

6

covered item." (D.E. 57, at 29).  Defendant acknowledged this policy in its second motion for summary judgment.  Id. at 6.  In its pending motion, it now asserts that "plaintiff has produced no evidence of a custom or practice," noting that he has conceded that he is unaware of similar complaints by other inmates.  (D.E. 107, at 7).

It is undeniably true, as Defendant claims, that "[a]n isolated incident is insufficient to show a custom or practice."  Id. (citing Bennett, 728 F.2d at 768 n.3).  However, Plaintiff has not sought to demonstrate a custom or practice of inadequate medical care.  On the contrary, he emphasizes the existence of an official policy endorsing and mandating the allegedly unconstitutional actions which he attacks.  (D.E. 59, at 1).  This is a perfectly acceptable substitute for evidence of a custom or practice in a § 1983 action against a county.  Lawson, 286 F.3d at 263 (citing Webster, 735 F.2d at 841).  Indeed, it is difficult to imagine more concrete evidence of a relevant policy to establish liability than Ms. Wix's unequivocal statement that the ACDC has chosen not to provide eyeglasses to indigent inmates.  Defendant's suggestion that Plaintiff "has [not] provided any written policy in order to meet his burden for Aransas County to be held liable" is only true insofar as Defendant itself submitted the written policy, and there was thus no need for Plaintiff to provide it.  (D.E. 107, at 7).

Defendant seemed to suggest at the October 27, 2010 hearing that the ACDC's policy of denying eyeglasses to indigent prisoners with impaired vision was secondary in importance to its more general policy of attending to the serious medical needs of its inmates.  Moreover, defense counsel intimated that Plaintiff was not denied corrective lenses pursuant to any specific policy regarding eyeglasses, but rather because an individual determination was made that his poor vision did not constitute a serious medical condition.  It is difficult to reconcile this narrative

with Ms. Wix's unambiguous declaration that eyeglasses are not covered by indigent healthcare, or with Defendant's own recitation of this policy in its filing. (D.E. 57, at 6, 29). In other words, if the ACDC had a policy of not providing eyeglasses, there would have been no reason to assess the quality of an inmate's vision before informing him that he would not be receiving corrective lenses. Finally, Plaintiff has consistently maintained, and Defendant has not denied, that he was never given an eye examination. (D.E. 29, at 2). It defies common sense that ACDC officials based the refusal of eyeglasses on a perception that his eyesight was not severely impaired if his vision was never seriously assessed in the first place.

If Defendant means to suggest that there are exceptions to the rule barring the provision of eyeglasses, it has not made that argument, let alone pointed to any evidence in support. Nor is it clear that such an exception would save the policy if it was in fact unconstitutional when applied uniformly. At any rate, it is surely reasonable for Plaintiff to infer from the definitive statement by Ms. Wix, in conjunction with the alleged verbal assurances that he received from Nurse Anzaldua, that he was being denied eyeglasses not because he was deemed to have an insufficiently serious medical need, but rather because the ACDC had put in place a blanket prohibition on providing eyeglasses to the individuals in its custody, regardless of their condition. (D.E. 29, at 2).

Accordingly, there is a question of fact concerning the existence of an official policy denying eyeglasses and summary judgment is not warranted on that ground.

**C.     There Is An Issue Of Material Fact As To Whether Plaintiff Suffered A Cognizable Injury As A Consequence Of Defendant's Actions.**

Defendant argues that Plaintiff has not established that he suffered an injury as the result of being denied medical care for his myopia. (D.E. 107, at 6-7). To support this contention, Defendant points to other circuits that have stressed the need for deliberate indifference actions to put forth "verifying medical evidence" confirming that the plaintiff sustained injuries. Id. at 6. It observes that Plaintiff has not cited any such evidence in this action. Id.

The decisions are unpersuasive. The first case cited by Defendant involved a very different factual scenario. It consisted of a § 1983 challenge to the care provided to an inmate after he allegedly suffered a sexual assault at the hands of guards. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1180 (11th Cir. 1994), overruled on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002). In such a situation, a court looks for medical evidence of the injury sustained because the complaint alleges the sort of deprivation that would naturally lead to medically detectable harm. This is not true of the deprivation of eyeglasses, where the principal harm one would expect would be precisely the sort of pain and suffering that is difficult to measure, such as severe headaches. See Benter v. Peck, 825 F. Supp. 1411, 1416, 1418 n.4 (S.D. Iowa 1993) (granting injunctive relief to a prisoner denied eyeglasses where he alleged "discomfort" and an inability to engage in normal prisoner activities); Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (suggesting that double vision and loss of depth perception can, in themselves, satisfy injury requirement). Indeed, those types of injuries have been the basis of Plaintiff's action from its commencement. (D.E. 1). More importantly, the Eleventh Circuit observed in Hill that plaintiffs "have not indicated how, or even if, the four-hour delay in

9

transporting Hill to a hospital exacerbated his medical condition." 40 F.3d at 1190. Here, however, Plaintiff has consistently maintained that his lack of eyeglasses for over seven months generated increasingly more serious pain and suffering, a contention that is far from implausible on its face.

The other case cited by Defendant, though factually more similar, is equally unavailing. There, an inmate sued prison officials for delaying the arrival of sunglasses he alleged were necessary to protect his eyes. Crowley v. Hedgepeth, 109 F.3d 500, 501 (8th Cir. 1997). As an initial matter, Crowley is distinguishable from the present action on the ground that it, like Hill, dealt with the delay of medical treatment, not its outright denial, a factor highlighted by the court. Id. at 502 ("We have held that, 'when the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured "by reference to the effect of delay in treatment."'") (emphases added) (citations omitted). Additionally, the Crowley opinion does not make clear in any detail the nature of the injury the plaintiff alleged. Indeed, the decision rests in part on a medical finding that the deprivation of sunglasses did not exacerbate the known medical impairments in the plaintiff's eyes, which were unrelated to light sensitivity. Id. Of course, that analysis is not germane to a plaintiff whose only complaint is nearsightedness, and who can therefore be expected to experience some degree of pain and discomfort if deprived of his glasses.

Furthermore, the Eighth Circuit in Crowley nowhere indicates that the plaintiff had sunglasses upon his arrival at prison, suggesting that prison officials had no reason to think the continued lack of sunglasses would cause him undue harm. Defendant has not disputed that Plaintiff was wearing prescription eyeglasses when he was admitted into the custody of the

ACDC, which would have given rise to an inference in the mind of a reasonable guard that the lack of such glasses posed a threat to his health and well-being.  To the extent that Defendant finds in Crowley an implicit endorsement of its argument that medical evidence must reflect a physically discernable injury whenever an inmate alleges harm flowing from the deprivation of eye-wear of any kind, the Court does not agree.

In Benter, a prisoner was granted injunctive relief when prison officials denied him glasses to correct his severe nearsightedness after his previous pair was destroyed while in custody.  825 F. Supp. at 1421.  The court did not require the showing of a medically recorded injury, noting that "because of Benter's poor vision without his glasses, he was unable to work at the prison or function in the general prison population."  Id. at 1416.  The court implied that Benter's injury consisted of continual "discomfort" and the inability to function normally without his glasses.  Id. at 1418 n.4.  Plaintiff's alleged injury is actually more intense than Benter's, as he claimed to suffer severe headaches, and more fully elaborated the range of prison activities in which he was unable to engage without his glasses. (D.E. 1, at 16).  Defendant's cavalier belittling of such limitations does not minimize their importance to an individual with a substantially constricted choice of recreations.  (D.E. 107, at 6).

Similarly, the Second Circuit has held that even though "double vision and ... loss of depth perception ... do not inevitably entail pain, they adequately meet the test of 'suffering' that *Gamble* recognized is inconsistent with 'contemporary standards of decency.'"  Koehl, 85 F.3d at 88 (quoting Estelle v. Gamble, 419 U.S. 97, 103 (1976)).  These precedents are solidly grounded in the fact that untreated poor vision can generate suffering and discomfort that is difficult to scientifically evaluate.  Plaintiff has alleged exactly the sort of suffering that one

would expect his deprivation to have caused.

Finally, it warrants mention that Defendant's protestations regarding the absence of medical evidence on the question of injury are in large part due to its own conduct. One of Plaintiff's principal claims is that he was denied an adequate medical examination of his eyesight, let alone corrective treatment. (D.E. 29, at 2). Defendant has not submitted any medical records, nor has it contested this assertion, conceding the fact that Plaintiff's vision was never subjected to a proper evaluation. In both Benter and Koehl, prison authorities made available documentation providing some medical evidence regarding vision for those courts to consult. Benter, 825 F. Supp. at 1415; Koehl, 85 F.3d at 87. Defendant here has not done so, and now asks that its omission be held against Plaintiff. Such a ruling would be grossly unfair and would provide incentives for prisons to withhold medical examinations lest the results ultimately confirm the allegations made in prisoner civil rights actions.

Because Plaintiff's alleged injury does rise to the level required in deliberate indifference actions, and because Defendant has not provided any evidence to dispute it, there is a material fact issue on the question and Defendant is not entitled to summary judgment on that ground.

**D.  Deliberate Indifference To Serious Medical Need.**

Defendant argues that Plaintiff has put forth no evidence that ACDC officials acted with deliberate indifference to his serious medical needs. (D.E. 107, at 4-6). In particular, it contends that there is no medical evidence that Plaintiff's need for eyeglasses was serious, and that there was never any reason for ACDC officials to suspect that his health was jeopardized by his lack of corrective lenses. Id.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must

allege the officials acted with deliberate indifference to serious medical needs. Estelle, 419 U.S. at 105; Wilson v. Seiter, 501 U.S. 294, 303 (1991); Varnado v. Lynaugh, 920 F.2d 320, 321(5th Cir. 1991) (per curiam). Deliberate indifference is more than mere negligence. Id. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Furthermore, negligent medical care does not constitute a valid § 1983 claim. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993), abrogated on other grounds by Arvie v. Broussard, 42 F.3d 249 (5th Cir. 1994) (per curiam) ("It is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim."). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

    **1.**    **As a legal matter, the denial of eyeglasses to inmates can constitute deliberate indifference to serious medical need.**

In addition to the deposition testimony and discovery responses, Defendant submits case law to bolster its position that Plaintiff's medical need was not serious for § 1983 purposes. (D.E. 107, at 4). In particular, it calls attention to two district court cases from the Eastern District of Pennsylvania, claiming that these opinions support the proposition that "[t]he need for

eyeglasses is not the type of medical need that a layperson would easily recognize as requiring a doctor's attention." Id.  These cases are not persuasive.  As an initial matter, there is controlling precedent to preclude Defendant's view: "[t]he Fifth Circuit has indicated that the denial of eyeglasses by prison officials may constitute an Eighth Amendment violation." Kemppainen, 626 F. Supp. 2d at 677-78 (citing Newman v. Alabama, 503 F.2d 1320, 1331 (5th Cir. 1974)).

Furthermore, the facts of the cases cited by Defendant are easily distinguishable from the instant action and thus have no bearing on its disposition.  The first involved an inmate who alleged that he had been prescribed contacts with the wrong prescription.  Henderson v. Umar, No. 88-6915, 1989 WL 71285, at *2 (E.D. Pa. June 26, 1989) (unpublished).  Dismissing the action, the court emphasized that the plaintiff had "been provided with at least three contact lenses and a pair of glasses" while incarcerated and that he therefore had "[c]learly ... not been *denied* medical care" but at most been given "*inadequate* medical care." Id. at *4 (emphases in original).  By contrast, Plaintiff here has alleged, and Defendant has not contested, that he was given neither an eye examination nor replacement glasses, and was therefore completely denied medical care.  Given the important distinction in § 1983 jurisprudence between the denial of medical care and its negligent administration, this discrepancy eliminates any relevance that Henderson might otherwise have had.  See, e.g., Stewart, 174 F.3d at 534; Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321.

In the second case cited by Defendant, summary judgment was granted to the defendant when he submitted medical evidence that the plaintiff suffered from only "a very slight visual impairment" of the sort that did not typically require eyeglasses and which a doctor did not expect to lead to "sustained visual deterioration or other physical difficulties." Borrelli v. Askey,

14

582 F. Supp. 512, 513 (E.D. Pa. 1984).  From the outset of this action, Plaintiff has insisted that he is nearsighted to the point of legal blindness and that he has suffered severe headaches and other pain and discomfort as a result of his uncorrected, and deteriorating, vision.  (D.E. 1).  Unlike in Borrelli, the Defendant has come forward with no medical evidence casting doubt on those assertions.  The legal authorities referenced by Defendant are therefore irrelevant to this action, do not support the proposition for which they are cited, and do not convince the Court to reverse its previous decision that the denial of eyeglasses to inmates can expose prison authorities to liability pursuant to § 1983.

### 2.   Plaintiff has not presented evidence confirming the seriousness of his medical condition.

At the October 27, 2010 hearing, Plaintiff was cautioned that he needed to produce evidence regarding the severity of his visual impairment during the time of his confinement at the ACDC in order to survive Defendant's pending motion for summary judgment.  In his response to the motion for summary judgment, he writes that "[m]ost of Plaintiff's evidence in this motion will be inferences from Plaintiff's sworn deposition and the exhibits produced by the Defendant at that deposition."  (D.E. 112, at 4).  He goes on to list several pieces of evidence, which he identifies by the exhibit number that they were apparently introduced under at his deposition.  Id.  These include, inter alia, contact lenses and eyeglasses that were in Plaintiff's possession while he was in custody at the ACDC.  Id.

Such items could shed light on the condition of Plaintiff's eyes during the relevant period, and could therefore provide insight into whether he had a serious medical need that the ACDC should have attended to.  Plaintiff was informed explicitly and at length that it was his

burden to come forward with concrete evidence rebutting Defendant's argument that a trial would be senseless in the absence of any medical records detailing the quality of his vision. Despite this warning, he has not attached any record of the exhibits he references, nor even excerpts from his deposition in which the cited exhibits are introduced, mentioned, or discussed. On December 14, 2009 Plaintiff responded to requests to produce various documents and other evidentiary items attesting to the state of his vision during his confinement at the ACDC by asserting that he was not in possession of any such records. (D.E. 107, Ex. B, at 4-8). When asked at the October 27, 2010 hearing whether he had evidence to refute Defendant's allegations, Plaintiff replied that he only had eyewitness testimony, and that the only prescriptions he was aware of were in the possession of TDCJ officials and had been created after the period relevant to his complaint. He stated that he did not have any earlier prescriptions and did not suggest that his vision at the time of his confinement at the ACDC could be divined from glasses or contact lenses in Defendant's possession.

     Defendant asserts that no evidence exists speaking to the condition of Plaintiff's eyesight during the time he was deprived of his glasses. (D.E. 107, at 2). Plaintiff has provided nothing to refute this assertion. Even under the liberal pleading rules applicable to pro se plaintiffs, and under the generous standards guiding summary judgment review, Plaintiff's unsupported contentions, articulated for the first time more than two years into litigation, are not sufficient to surmount summary judgment. See Fed. R. Civ. P. 56(e); Liberty Lobby, 477 U.S. at 248-49 (citation omitted) (non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment). Plaintiff was warned in no uncertain terms that the time and expense of a jury trial would not be

justified if he did not come forward with some evidence showing that his vision was as compromised as he maintains. He has not done so. As a result, he has not met his burden and his action is dismissed.

## VI.  CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment, (D.E. 107), is hereby granted, and this action is dismissed.

ORDERED this 23rd day of November 2010.

BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE